IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **BILLY COMPTON BOLDIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: CV-03-HS-2932-NE** |
| ) | |
| **LIMESTONE COUNTY, ALABAMA** ) | |
| **et al.** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OF OPINION

Before the Court is the Motion for Summary Judgment (doc. 40) filed by the Defendants Tommy Raby and Limestone County. Argument on the motion was heard on January 19, 2005.

### PROCEDURAL HISTORY

The Plaintiff commenced this action on October 30, 2003 by filing a complaint in this Court alleging claims under 42 U.S.C.A. § 1983 based upon violations of his rights under the First Amendment of the United States Constitution. Plaintiff contends that on October 30, 2001, the Defendants terminated the Plaintiff's employment in retaliation for his expression of political opinion. The Plaintiff originally brought claims against Limestone County, Tommy Raby, Stanley Menefee, William Latimere, and David Seibert. However, on September 22, 2004, the Plaintiff moved to voluntarily dismiss the claims against Menefee, Latimere and Seibert, and those claims were dismissed.[1]

---

[1]On March 26, 2004, the Plaintiff moved to amend his Complaint to add a claim under the Equal Protection Clause of the Fourteenth Amendment. Because the Defendants do not object, that motion is hereby **GRANTED**. Accordingly, in resolving the instant motion for summary judgment, the Court will address the merits of the Plaintiff's Equal Protection claim.

1

On September 29, 2003, the remaining Defendants, Tommy Raby and Limestone County, moved for summary judgment asserting that (1) Defendant Raby is entitled to summary judgment on qualified immunity grounds; and (2) Defendant Limestone County is entitled to summary judgment because the Plaintiff has failed to present any evidence that Limestone County violated the Plaintiff's First Amendment rights.

Both parties have filed briefs and submitted evidence in support of their respective positions. The Defendants submitted evidence[2] in support of their own motion for summary judgment and filed a supporting brief (doc. 41) on September 29, 2004. On November 17, 2004, the Plaintiff filed evidence[3] in opposition to Defendant's motion for summary judgment and a brief (doc. 52) in response to the Defendant's motion for summary judgment. The Defendants filed a reply (doc. 54) on January 10, 2005.

## FACTS

Limestone County is organized into a district system. Each district has an elected commissioner who supervises the employees in that district. (Raby Decl. ¶2.) Each commissioner has the authority to hire, discipline, and fire the employees of that district, in keeping with the

---

[2] The Defendants submitted the deposition transcripts of Billy Boldin, Freddie Puckett, Chris Davis, Tommy Raby, Ronald Lewter, Clyde Davis, Bobby Morris, Rick Watkins, Randy Mashburn, and Ronnie Mewbourne. Declarations were submitted from Tommy Raby, Bobby Morris, Rick Watkins, and Chris Davis. Defendants also submitted a transcript of a hearing before the Limestone County Commission, and four other specific documents. References to the deposition transcripts are denoted by the last name of the deponent, followed by the abbreviation "Dep.," followed by the page number or the deposition exhibit being referenced. Declarations are denoted as "Decl." Documents are identified by their title and date.

[3] The Plaintiff submitted the depositions of Bill Boldin, Chris Davis, Clyde Davis, Ronald Lewter, Bobby Morris, Freddie Puckett, Tommy Raby, and Rick Watkins. Declarations were submitted from Bill Boldin and Ronald Lewter. Hearing transcripts were submitted containing the testimony of Tommy Raby and Lance Davis. Document exhibits were also provided.

policies of the Limestone County Polices and Procedures Manual. (Raby Decl., ¶2.)

Billy Boldin began working for Limestone County in 1997, as a temporary operator in the District One road crew. (Boldin Dep., at 41.) Former District 1 Commissioner Darryl Sammett hired Boldin. (Boldin Dep., 41- 42.) Boldin was later given a full-time position as an operator for the Limestone County Road Department. (Boldin Dep., 44.) While working for Limestone County, Mr. Boldin bush-hogged, patched roads, hauled materials in trucks, and operated a dump truck. (Boldin Dep., 43-44.) Before Boldin became employed with Limestone County, he had been employed driving heavy equipment and machinery for approximately twenty-five years. (Boldin Dep., 34-41.) Defendant Tommy Raby became Boldin's supervisor when he was elected District 1 Commissioner in 1998.

On October 25, 2001, upon arriving at the District 1 shed, Boldin was assigned to drive the dump truck identified as Unit 112. (Boldin Dep., 110; Pucket Dep., 75-76.) Boldin objected to the assignment because he had experienced trouble with the truck the previous day.[4] (Boldin Dep., 105-10.) The foreman, Freddie Pucket, told Boldin that the truck was fine. When Boldin persisted in his objections, Puckett told Boldin to run the truck "until it quit."[5] (Boldin Dep., 110; Pucket Dep. 75-76.)

As Boldin fueled up and set off in Unit 112 that morning, Clyde Davis did not hear that the truck was having any mechanical problems. (Davis Dep., 48.) Similarly, Boldin's coworker, Rick

---

[4]On October 24, 2001, Boldin had complained that the truck was smothering down. In response, the District 1 mechanic, Clyde Davis, replaced the fuel filter in the truck, drove the truck around, and found it to be in working order. (Davis Dep., at 15-17, 43.)

[5]The Defendants contend that Boldin was unhappy with his work assignment (Raby Dep., 208; Puckett Dep., 76), but Boldin disputes this.

Watkins, who followed behind Boldin for part of the way to the work site, did not hear any problems with the truck. (Watkins Dep., 101-04.) Additionally, along the way to the truck stop, Boldin stopped for a biscuit. Freddie Puckett was at the truck stop when Boldin arrived, and Boldin did not inform Puckett of any problems with truck. (Boldin Dep., 111.)

However, by the time that Boldin arrived at the job site, the truck was emitting a loud squeal as it drove and was leaking transmission fluid. (Watkins Decl., ¶ 3; Mashburn Dep., 17.) The District 1 workers examined the truck's engine and observed that the transmission was cracked. (Boldin Dep., 115.)

Unit 112 was towed back to the District 1 shed. Raby asked a mechanic employed by Conquest, a local GMC dealer, to examine the truck and give a cost estimate of repair. The mechanics at Conquest reported to Raby that several of Unit 112's transmission gears were broken and estimated that it would cost $16,000 to repair. (Raby Dep., 211-14.) Unit 112 had 45,000 miles on it. The Conquest mechanic told Tommy Raby that driver abuse was the likely cause of the damage to the truck. (Raby Dep., 211-14.)

Clyde Davis, the District 1 mechanic and a mechanic of twenty years, also examined Unit 112. He observed a hole in the transmission that was about six inches across. (Davis Dep., 31.) The reverse and first gears were missing teeth. (*Id.*) Based on the nature of the damage, Davis informed Raby that he thought that driver abuse caused the damage to Unit 112. (Davis Dep., 28-31.) Raby asked Bobby Morris, a mechanic of 35 years who operates the Morris Garage, to examine the truck and provide a second estimate on the repair job and another opinion on the cause of the damage.

On October 26 and 27, Boldin voluntarily took leave from work. On or about those same days, the District 1 foreman, Freddie Puckett, investigated the cause of the damage to Unit 112.

4

Puckett followed the trail of transmission fluid that had leaked out of Unit 112. Puckett discovered that the trail of leaked transmission fluid started on a road behind a feed store called the Saddle Rack. (Puckett Dep., 110-13.) An employee of the Saddle Rack named Lance Davis approached Puckett while Puckett was investigating the transmission fluid leak. Davis told Puckett that he observed Unit 112 as it passed by the store the previous morning and that the truck was making a "real shrill racket." (Transcript from hearing before Limestone County Commission, 40).

On October 30, 2001, Boldin returned to work. When Boldin arrived, Raby told Boldin that he was waiting on a phone call from Bobby Morris; if Bobby Morris confirmed that the damage to Unit 112 was caused by driver abuse, Raby intended to terminate Boldin's employment. Later in the day, Morris phoned Raby and informed him that driver abuse was the likely cause of the damage.[6] (Raby Dep., 228; Statement of Bobby Morris, dated 11/1/01.) Raby asked Morris if he was absolutely sure that the driver caused the damage to the transmission, to which Morris responded that the way the parts were damaged it had to be from driver abuse. (Raby Dep., 228.) After the receiving the phone call, Raby terminated Boldin.

Boldin appealed his termination to the Limestone County Commission. The Commission held a hearing. (*See* Transcript from hearing before Limestone County Commission.) The Commission upheld the termination. (Boldin Dep., 153.)

In this lawsuit, Boldin alleges that he was terminated in retaliation for his political

---

[6]Morris described the damage to Unit 112 as major and highly unusual. (Morris decl., ¶4.) He concluded that the damage could not have been caused by a deterioration of any transmission parts over time or by a chain reaction caused by small problems in the transmission culminating in larger problems over time. (Morris decl., ¶4; Morris Dep., 47.) The damage also could not have been caused by any problem that the transmission might have had on October 24, 2001, the day prior to the discovery of the crack in Unit 112's transmission. (Morris decl., ¶4; Morris Dep., 53.)

expression. Specifically, he alleges that he was terminated because, three years earlier, in 1998, he supported Raby's opponent in the Democratic primary for the office of County Commissioner. In that primary election, Raby was opposed by the incumbent Darryl Sammett. Boldin supported Sammett. At a cookout held prior to the primary election, Raby accused Boldin of knocking-down Raby's signs. Boldin alleges that Raby asked Boldin to leave the cookout. (Boldin Dep., 156.)

After Raby won the election, Ronald Lewter attests that he heard Raby say that Raby would have a better crew if Boldin was not a member of it. (Lewter Dep., 29.) Lewter also recalls that soon after the election Raby said he was displeased that Boldin supported his opponent. (*Id.*, at 31-33.) During the following years, Raby periodically would ask Lewter to trade one of Lewter's crew members for Boldin. (*Id.*, at 36-37.) Raby last proposed swapping employees with Lewter sometime less than a year prior to Lewter's retirement in August 2001. (Lewter Dep., 12, 38.)

When Boldin ran for the city counsel, Raby donated $100 to his campaign. (Boldin Dep., 90.) Boldin made Raby the beneficiary of Boldin's life insurance policy with the expectation that Boldin would ensure that Boldin's daughter would receive any life insurance proceeds in the event of Boldin's death. (Boldin Dep., 70.) On one occasion while Boldin was supervised by Raby, a mechanic told Raby that Boldin had damaged a tractor in a way that suggested intentional abuse. (Raby Dep., 89, Watkins Dep., 85; Davis Dep., 61.) When Raby questioned Boldin about the mechanic's accusation, Boldin told Raby that he did not intentionally abuse the equipment. Based on Boldin's denial, Raby decided not to pursue the matter. (Raby Dep., 112.)

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000)  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

Where a defendant moves for summary judgment against a plaintiff's claims, the defendant can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial

can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## ANALYSIS

**I.**     *Limestone County's Motion for Summary Judgment*

In his opposition to summary judgment and at oral argument before the Court, the Plaintiff conceded that summary judgment was warranted as to Limestone County. *See* Plaintiff's Brief in Opposition to Summary Judgment, at 2. Accordingly, Limestone County's motion for summary judgment will be granted.

**II.**     *Tommy Raby's Motion for Summary Judgment*

Raby moves for summary judgment on grounds of qualified immunity. To be eligible for qualified immunity, "the official must have been engaged in a discretionary function when he performed the acts of which the plaintiff complains." *Holloman v. Harland*, 370 F.3d 1252,1262

(11th Cir. 2004). Boldin does not contest that Raby's termination of the Plaintiff was within the scope of his discretionary authority. Accordingly, Raby's potential eligibility for qualified immunity has been established. The burden therefore shifts to the Plaintiff to show that Raby is not entitled to qualified immunity. *Id.*

"To overcome qualified immunity, the plaintiff must satisfy a two prong test; he must show that (1) the defendant violated a constitutional right; and (2) this right was clearly established at the time of the alleged violation." *Id.* The first inquiry asks whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second inquiry probes whether the right was clearly established at the time the official performed the alleged wrongful acts. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002)). "[T]he salient question ... is whether the state of the law ... gave [the officials] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002).

  A.  *Boldin's First Amendment Claim*

Boldin's first claim is that Raby violated his rights under the First Amendment of the Constitution. *See* U.S. CONST., amend 1. He contends that Raby's decision to terminate his employment was retaliation for Boldin's exercise of his First Amendment rights to engage political speech.

To establish that he was retaliated against in violation of the First Amendment, Boldin must show that (1) his speech was on a matter of public concern; (2) his right to speak on the matter of

public concern outweighed his public employer's interest in promoting the efficiency of the services it performs through its employees; (3) his speech played a substantial role in the decision to terminate his employment; and (4) the public employer did not have another valid reason for the adverse employment action. *See McKinley v. Kaplan*, 262 F.3d 1146, 1149 (11th Cir. 2001).

On the first element, Boldin asserts only a single instance where he engaged in speech on a matter of public concern. In 1998, Boldin campaigned in support of Raby's opponent in the Democratic primary for the office of county commissioner. (Boldin Dep., 156.) Raby does not dispute that campaigning for a candidate for public office constitutes speech on a matter of public concern. *See Stough v. Gallagher*, 967 F.2d 1523, 1527 (11th Cir. 1991) ("Political speech addressing public issues or candidates running for public office invariably address matters of public concern …."). Furthermore, Raby does not seriously contest that Boldin's right to speak outweighed Raby's interest in promoting efficient operations. Instead, the primary dispute between the parties relates to whether Boldin has created genuine issues of material fact on the third and fourth prongs.

Raby argues that Boldin has failed to present any evidence that speech played a substantial role in Raby's decision to terminate Boldin. The Court agrees. The record is undisputed that Raby discharged Boldin based upon Raby's conclusion that Boldin caused significant damage to Unit 112 by driving it abusively. There is no dispute that on October 25, 2001, Unit 112's transmission was damaged at some point after Boldin departed from the District 1 tool shed but prior to Boldin's arrival at the work site. (Davis Dep., 48; Watkins Dep., 101-04; Watkins Decl., ¶ 3; Mashburn Dep., 17) There is no dispute that Boldin was the only driver of Unit 112 during this period. Prior to discharging Boldin, Raby received the opinion of three mechanics, all of whom concluded that driver abuse caused the damage to Unit 112's transmission. (Raby Dep., 211-14, 228; Davis Dep., 28-31)

Boldin admits that two of these mechanics are impartial in this matter.

There also is no dispute that abuse of public property is an infraction warranting discharge. Limestone County's Personnel Policies and Procedures lists "willful damage to public property" as a ground "for which an employee may be subject to dismissal … . as shall be deemed appropriate under the circumstances."[7] (*See* Limestone County's Personnel Policies and Procedures, (Defendants' Ex. Q), §§ X, XI.) The Limestone County Commission, who Boldin agrees evidenced no animus against Boldin, conducted a hearing on Boldin's discharge and concluded that the dismissal was entirely proper under the County's policies.

Against this, Boldin relies on two pieces of evidence. First, Boldin argues that Puckett's comment to Boldin to run Unit 112 "until it quits" demonstrates that Raby's discharge of Boldin was pretextual. In making this argument, Boldin theorizes that Raby "orchestrated plaintiff's termination by ordering plaintiff to drive the dump truck until it quit and then firing plaintiff for abusing the dump truck when the transmission went out shortly [after] the plaintiff complained that the truck was not running right." Plaintiff's Brief in Opposition to Summary Judgment, at 2. The record is devoid of evidence supporting this hypothesis. There is no evidence whatever supporting the existence of a conspiracy against Boldin, nor that Unit 112's damage was orchestrated prior to Boldin driving the truck on the morning of October 25, 2001. To the contrary, the evidence indicates that, on a prior occasion where Boldin was accused of abusing the District's equipment, Raby

---

[7] Boldin argues that his abuse of Unit 112 might not have constituted adequate cause for dismissal because Raby lacked evidence that the damage was "willful" within the meaning of the County's personnel policies. This argument is foreclosed by the County Commission's conclusion that the dismissal was warranted. Limestone County's personnel policies provide for an appeal of disciplinary action to the County Commission. Boldin utilized his appeal, and the Commission ruled in Raby's favor. Accordingly, there is no question that the driver abuse at issue in this case warranted discharge under the County's policies.

determined not to discipline Boldin based solely on Boldin's word that he did not intentionally abuse equipment. (Raby Dep., 89, 112; Watkins Dep., 85; Davis Dep., 61.) This evidence is flatly incompatible with Boldin's unsupported conjecture that for three years Raby has been "hiding in the weeds," waiting for the moment when he could orchestrate an elaborate design that would permit him to discharge Boldin with impunity.

 Second, Boldin relies on the deposition testimony of Ronald Lewter to show that Raby was substantially motivated by Boldin's speech in determining to discharge him. Lewter testified that after the 1998 county commissioner Democratic primary, Raby stated to Lewter that he did not like the fact that Boldin campaigned against him. (Lewter Dep., 31.) However, the Eleventh Circuit has held that a gap of fifteen months is too long to permit any inference of a relationship between the protected conduct and the allegedly retaliatory discharge. *See Maniccia v. Brown*, 171 F.3d 1364, 1369-70 (11th Cir. 1999) (on a case involving a Title VII retaliation claim, holding that the passage of fifteen months between the protected activity and retaliation showed no temporal relationship between the two events). To the contrary, the remoteness in time of the termination strongly indicates that speech was not the basis for Boldin's termination.

 Boldin seeks to close the gap between Boldin's speech and the discharge by relying on Lewter's testimony that, in the years following the election, Raby periodically asked Lewter to trade one of Lewter's crew members for Boldin. (*Id.*, at 36-37.) Boldin argues that Raby's periodic requests evidence his enduring resentment towards Boldin's political opposition. However, according to Lewter's own testimony, Raby last proposed swapping employees with Lewter sometime less than a year prior to Lewter's retirement in August 2001. (Lewter Dep., 12, 38.) Even assuming *arguendo* the disputable proposition that Raby's comments about trading Boldin indicate

an enduring animus towards Boldin's speech (and not some other displeasure with Boldin's work), the most recent comment presented in Boldin's evidence was still approximately a year prior to Boldin's discharge on October 30, 2001. The Court concludes that this evidence is too equivocal and remote in time to provide a reasonable basis for a jury to infer that Raby discharged Boldin due to Boldin's political exercise three years earlier. *See Maniccia,* 171 F.3d at 1370. As a matter of law, such an inference would not be reasonable.

Even assuming *arguendo* that Lewter's testimony did constitute some evidence that Raby may have acted under a retaliatory motive, Boldin's claim would nevertheless fail under *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 286 (1977). In cases where a plaintiff has shown that a public employer acted under both lawful and unlawful motives, *Mt. Healthy* provides that the public employer cannot be held liable if the evidence shows that the public employer would have arrived at the same employment decision even in the absence of the allegedly protected conduct. *Id.* Here, the undisputed evidence indicates that an impartial public employer would have discharged Boldin without regard to his acts of political expression. This is established by the decision of the Limestone County Commission, who Boldin concedes was impartial, to affirm Raby's dismissal of Boldin based on the evidence that his abusive driving damaged Unit 112. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1269-70 (11th Cir. 2001) (relying on the decision of an impartial ultimate decision-maker to conclude that the same decision would have been made regardless of the actual decision-maker's possible mixed motive). In light of the abundant evidence that Boldin's abusive driving caused the damage to Unit 112's transmission, and in light of the Commission's independent decision to affirm Boldin's termination based upon that evidence, the Court concludes that there is no genuine issue of fact but that a public employer harboring no

13

improper motive would have determined to discharge Boldin. For that reason, even if the Court assumes that in discharging Boldin Raby partially was motivated by a three year grudge, Boldin's claim nevertheless fails under *Mt. Healthy*.

Boldin has failed to show that his termination was in violation of his First Amendment rights. Raby therefore is entitled to qualified immunity on Boldin's First Amendment claim.

### B. *Boldin's Equal Protection Claim*

In his amended complaint, Boldin claims that his termination violated of the Equal Protection Clause of the Fourteenth Amendment. Boldin makes this claim under the "class of one" theory recognized by the Supreme Court in *Willowbrook v. Olech*, 528 U.S. 562 (2000). In *Willowbrook* the Supreme Court affirmed that an Equal Protection claim involving a class of one is stated by alleging that a Plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564.

At oral argument before this Court, the Plaintiff conceded that the Court's rejection of Boldin's First Amendment claim would similarly doom his Equal Protection claim. Based upon this concession, the Court concludes that Raby is entitled to qualified immunity on Boldin's Equal Protection claim. Additionally, the Court finds that the Eleventh Circuit has never recognized an Equal Protection "class of one" claim in the setting of public employment. This lack of prior jurisprudence compels the conclusion that any rights that Boldin can assert under a "class of one" theory of Equal Protection are not "clearly established" so as to give Raby "fair warning" that his conduct was unlawful. *See Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003) ("For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'") (quoting *Hope v.*

*Pelzer*, 536 U.S. 730 (2002)).  On this basis and on the basis of the Plaintiff's concession, the Court finds that Raby is entitled to judgment on Boldin's Equal Protection claim on qualified immunity grounds.

## CONCLUSION

Based upon the foregoing, the Defendants Limestone County and Raby are entitled to summary judgment.  A separate order will be entered.

**DONE** and **ORDERED** this 16th day of February, 2005.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge